IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville December 13, 2011

**STATE OF TENNESSEE v. TIMOTHY L. MORTON**

**Direct Appeal from the Circuit Court for Williamson County**
**No. IICR024701      Timothy L. Easter, Judge**

**No. M2011-00876-CCA-R3-CD - Filed March 30, 2012**

Appellant, Timothy L. Morton, appeals the revocation of his probation, claiming that the trial court abused its discretion by revoking his probation and ordering execution of the original effective sentence of three years. Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and JOHN EVERETT WILLIAMS, J., joined.

Steven M. Garner (on appeal) and Ernest W. Williams (at revocation hearing), Franklin, Tennessee, for the appellant, Timothy L. Morton.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Kim R. Helper, District Attorney General; Kelly A. Lawrence, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

I.  Facts and Procedural History

On August 9, 2010, appellant pled guilty to driving under the influence, fourth offense and driving after having been declared an habitual motor vehicle offender. Upon recommendation of the State, he received a sentence of one year for driving under the influence, fourth offense, and two years for the habitual motor vehicle offender violation, to be served consecutively. The court suspended the entire sentence, and appellant's probation began on August 9, 2010.

Appellant's probation officer, Connie Martin, filed a probation violation report on February 25, 2011, alleging that appellant had violated two separate conditions of his probation. Ms. Martin alleged that the first violation involved committing new criminal offenses, including resisting arrest, assault on an officer, and disorderly conduct. The second basis for violation involved making threats to Nathan Buttrey, the Governor's Assistant Director for Constituent Affairs, Governor Haslam, and others.

The trial court held a probation revocation hearing on March 22, 2011. Officer Jeff Tarkington with the Gallatin Police Department testified that on December 22, 2010, he responded to an emergency call. The male caller reported that he had been robbed and that the suspects had left on foot. When Officer Tarkington and other officers responded to the area, they were unable to locate the person who made the emergency call. Officer Tarkington asked the dispatcher to call the person back and ask him to return to the scene, but no one came back. At some point, the officer ascertained that the 9-1-1 call had originated from appellant's cellular telephone. Officer Tarkington first contacted appellant via telephone. Appellant maintained that he did not make the emergency telephone call and that another individual whose name was also Timothy had made the call. However, appellant could not provide any further information regarding the identity of the alleged other caller. Appellant advised the officer that he was presently at a gas station, but gave the officer his address and said that he would meet him there shortly. Officer Tarkington then visited appellant's residence. Officer Tarkington did not have a warrant when he went to appellant's residence.

Upon arrival at appellant's home, Officer Tarkington asked for identification. The officer began writing a citation for misuse of the 9-1-1 emergency system while he was holding appellant's identification card. At this point, appellant demanded that the officer return his card. Because he was still using it to issue the citation, Officer Tarkington refused. Appellant insisted that the card was his property, to which the officer responded that the card was issued by the State of Tennessee and was state property. When Officer Tarkington refused to return appellant's identification card upon demand, appellant attempted to assault him. Officer Tarkington restrained appellant on the front porch of his residence. The officer then released appellant, but he continued to be combative, causing Officer Tarkington to use his taser on appellant. The officer called for back-up and advised that he had "tased" appellant. At that point, the officer took appellant into custody.

After meeting with appellant at his residence, Officer Tarkington realized that he had actually encountered appellant earlier in the day when Officer Tarkington was leaving the area where the caller had placed the 9-1-1 call. Although another officer talked with appellant at the place where the 9-1-1 call was made, Officer Tarkington recognized appellant as being the same person who was there earlier.

The State also presented Nathan Buttrey as a witness at the probation revocation hearing. He encountered appellant during his tenure at the Governor's office. Mr. Buttrey's first contact with appellant was February 4, 2011. Appellant faxed a twenty to thirty-page document to the Governor's office. Appellant addressed the faxed document to approximately eight or nine other offices, including media offices, courts, politicians, and the Department of Justice. Appellant sent the document every day for approximately two weeks. Some of the documents indicated that appellant wished for a civil war so that "we can ride the people who wronged others." Because he started his position when the Governor was inaugurated in January, 2011, Mr. Buttrey did not know whether or how often appellant sent the same fax to the previous administration. At some point, Mr. Buttrey called appellant and asked him to stop sending the same faxed document, as the packet was quite large. Appellant's response indicated that his fax machine sent the document automatically but that he would try to figure out how to make it stop resending the document.

During this time, Mr. Buttrey spoke with appellant by telephone and attempted to gather information about his previous criminal cases and the issues with which he wanted the Governor's assistance. He also forwarded the faxed packet to the Administrative Office of the Courts. On or about February 22, 2011, after conducting research and speaking with the Governor's legal staff and his director, Mr. Buttrey advised appellant that the Governor's office had limited jurisdiction to assist him and that he should retain an attorney to pursue his legal matter. Appellant responded angrily. He yelled, screamed, and threatened violence against Mr. Buttrey, Caucasians, and the Governor. He specifically stated that "he wanted to beat white people to death," that "he wanted to get some blood," and that "he wanted to stab the Governor in the face with a pencil." Mr. Buttrey treated appellant's threats as being legitimate in nature. Appellant had advised Mr. Buttrey that appellant was restricted from contacting offices of various courts and governmental offices. Due to that fact, in conjunction with appellant's erratic behavior and self-reported violent history, Mr. Buttrey felt threatened by his comments.

Following this exchange, Mr. Buttrey spoke with the Governor's executive security detail. After an initial meeting with a member of the security detail, Mr. Buttrey gave all of the information to Special Agent in Charge Mark Stanford with the Criminal Investigative Division of the Tennessee Highway Patrol.

On February 25, 2011, appellant called Mr. Buttrey again. Appellant thanked Mr. Buttrey for treating him well and taking the time to help him. Appellant told Mr. Buttrey how much he appreciated his help. Appellant made the telephone call in the morning and was served with the probation violation arrest warrant that afternoon.

Gary Wix, a member of the Criminal Investigative Division of the Department of Safety, also testified at appellant's probation revocation hearing. Special Agent Mark Stanford gave Agent Wix the information regarding the threats made by appellant. Appellant had made threats against the current and former governors, multiple attorneys general, and several others. Agent Wix met with appellant on February 25, 2011, at the parole office in Gallatin, Tennessee. According to Agent Wix, appellant acknowledged having made the comments regarding his desire to have a civil war but denied having made threats against the Governor. Agent Wix testified that appellant was hard to question because it was difficult to keep him on the subject. Appellant told Agent Wix that he had been involved in a car wreck years earlier and had suffered a brain injury as a result.

Appellant testified on his own behalf at the hearing. He testified first about Officer Tarkington coming to his house to investigate the emergency call. Appellant stated that the officer did not have a warrant. He also stated that while he voluntarily gave the officer his identification, the officer would not return it when he asked. They argued about whether the card belonged to appellant or the state. Appellant had been drinking and took a swing at the officer.

Appellant stated that as a result of the previous car wreck, he suffered many internal injuries. He was presently suffering from an object imbedded in his abdominal area that was causing hernias to develop. He testified at length about the multiple hernias and the complications therefrom. Appellant had consulted with the Veteran's Hospital and was scheduled to undergo surgery in the near future, but he had to get his diabetes under control before the doctors could operate. He could not affirmatively state that the condition worsened as a result of the taser.

Appellant testified that he began contacting the Governor's office regarding a perceived wrong that he had experienced. Years earlier, appellant was involved in a high-speed chase that led to charges against him in both counties in which the chase occurred, Davidson and Sumner. He had to post bond in both counties in order to be released from jail. Appellant has maintained that this practice was a violation of his constitutional right against double jeopardy and that he was entitled to a refund of the bond money in one of the counties. His campaign with the Governor's office and other offices involved trying to resolve the matter to his satisfaction. The assistant district attorney elicited further information regarding appellant's history of inappropriate communications with government offices. The appellant testified to a litany of different letters appellant had written, threats to file complaints, complaints he had filed, and offices that had asked him to cease communications. All of the communications had been with regard to violations of his various constitutional rights. Appellant testified about his lengthy criminal history and unsuccessful attempts to comply with previous orders of probation.

Following the hearing, the trial court found insufficient evidence to support either appellant's physical or mental disability. The court concluded that the State presented proof by a preponderance of the evidence that appellant had committed the offenses of assaulting an officer, resisting arrest, and disorderly conduct. The court also determined that appellant had engaged in threatening or intimidating behavior. The trial court then revoked appellant's probation. Defense counsel filed a timely notice of appeal on April 21, 2011.

## II. Analysis

In this appeal, appellant contends that the trial court abused its discretion by revoking his probation and ordering execution of the sentence. After a thorough review of the record, we affirm the trial court's order of probation revocation and incarceration.

The revocation of a suspended sentence rests in the sound discretion of the trial judge. *State v. Leach*, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995) (citing *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991)). In determining whether to revoke probation, it is not necessary that the trial judge find that a violation of the terms of the probation has occurred beyond a reasonable doubt. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). If the trial court finds by a preponderance of the evidence that the defendant has violated the conditions of probation, the court is granted the authority to revoke the probation and suspension of the sentence. Tenn. Code Ann. § 40–35–311(e)(1) (2010). The appellate standard of review of a probation revocation is abuse of discretion. *See State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *see also State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007). Generally, "[a] trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010).

Appellant first argues that he had a property interest in his driver's license/state-issued identification card; that the officer illegally retained control over the card; that appellant was legally entitled to recover the card; and that the trial court failed to consider his property interest and legitimate attempt to retrieve the card as justification for his actions.

A driver's license is a state-issued certificate authorizing a person to operate a motor vehicle. Black's Law Dictionary (9th ed. 2009). The procedure, fees, and requirements for obtaining a driver's license are set forth by the state legislature. *See* Tenn. Code Ann. § 55-50-301 (2008) et seq. Because it is the entity that grants the license, the state, through the Department of Public Safety, has the authority to revoke the license to drive. *See* Tenn. Code Ann. § 55-50-501 (2008) et seq. The legislature also granted the Department of Public Safety authority to issue a state-issued photograph identification card. Tenn. Code Ann. §

55-50-336 (2008). The photo identification card contains substantially the same information as a driver's license and clearly indicates thereon that it is "for identification purposes only–not valid for vehicular use." Tenn. Code Ann. § 55-50-336(b) (2008). The Department of Public Safety issues photo identification licenses in the same manner as drivers' licenses. Tenn. Code Ann. § 55-50-336(c) (2008). Further, a photo identification license issued by the department "shall indicate if the license holder has previously had a license revoked or suspended due to a conviction for violation of § 55-10-401," driving while under the influence. Tenn. Code Ann. § 55-50-336(d) (2008). Thus, if the state can divest an individual of his license to operate a motor vehicle, the license cannot be the property of the licensee. We reject the first premise of appellant's argument, concluding that he did not hold a valid property interest in his state-issued photo identification card.

Even if appellant was correct in his mistaken belief that he enjoyed a property interest in his identification card, he was not entitled to use force against Officer Tarkington to retrieve the card. The relevant part of Tennessee Code Annotated provides:

> (b) A person who has been *unlawfully* dispossessed of real or personal property is justified in threatening or using force against the other, when and to the degree it is *reasonably* believed the force is immediately necessary to . . . recover the property, if the person threatens or uses force immediately . . . [and]:
>
> > (1) The person reasonably believes the other had no claim of right when the other dispossessed the person; *and*
> >
> > (2) *The other accomplished the dispossession by threatening or using force against the person.*

Tenn. Code Ann. § 39-11-614(b)(1) & (2) (2008) (emphasis added). The facts developed at the hearing clearly negate the appellant's right to use force to reclaim the identification card. Appellant was not "unlawfully" dispossessed of his identification card. The officer asked for identification, and the appellant complied with the request. It is counterintuitive that one might believe that he may use force against a police officer in general, but certainly not to reclaim an identification card from his temporary possession. Finally, the statute requires that both subsections (1) and (2) be met to justify use of force to protect one's property. The requirement of subsection (2) is clearly not met, as the officer did not utilize threats or force to obtain appellant's identification card. We conclude that even if appellant mistakenly believed that he had a property interest to protect, he was not justified in using force to repossess the identification card.

Our conclusions above are dispositive with regard to appellant's invitation to apply the plain error doctrine to this case. Appellant asks this court to review the trial court's failure to consider appellant's right to use force to retrieve his property. Our supreme court formally adopted the *Adkisson* test for reviewing claims of plain error:

> The Court of Criminal Appeals has developed five factors to consider when deciding whether an error constitutes "plain error" in the absence of an objection at trial: "(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice.'"

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). All five factors must be established by the record before a court will find plain error. *Id.* at 282. Complete consideration of all the factors is not necessary when clearly at least one of the factors cannot be established by the record. *Id.* In this matter, the record clearly indicates that subpart (b) of the *Adkisson* test is absent. The trial court did not breach a "clear and unequivocal rule of law" by failing to consider, on the record, appellant's mistaken belief that he held a property interest in the identification card. Thus, this court need not conduct an analysis of the remaining prerequisites of "plain error." *See id.*

In his brief, appellant alludes to a sufficiency of the evidence issue with regard to the offenses for which he was arrested. This court recognizes that new arrests and pending charges may lead to proper grounds upon which a trial court can order revocation of a defendant's probation. *See Harkins*, 811 S.W.2d at 83 n. 3. In doing so, however, a trial court may not rely on the mere fact of an arrest to revoke a defendant's probation. A revocation for garnering new arrests requires the State to "produce evidence in the usual form of testimony" in order to establish the commission of the offense while defendant was on probation. *State v. Walter Lee Ellison, Jr.*, No. 01C01-9708-CR-00361, 1998 WL 272955, at *2 (Tenn. Crim. App. May 29, 1998). It is not necessary that the trial court find proof of the offenses for which appellant was arrested beyond a reasonable doubt. Proof by a preponderance of the evidence that he committed new offenses is sufficient.

The trial court heard testimony from Officer Tarkington regarding appellant's violation of the first condition of probation, that appellant would "obey the laws of the United States or any State in which I may be, as well as any municipal ordinances." The officer testified about the facts giving rise to appellant's three new arrests. Unlike cases in which the trial court based a probation revocation upon the fact that the probationer had new

arrests, without hearing additional proof concerning the bases for the arrests, the evidence considered by the trial court in this matter satisfied the state's burden of proof of "by a preponderance of the evidence." *See generally Walter Lee Ellison, supra.* The trial court heard ample evidence upon which to order revocation of appellant's probation based on new offenses. The trial court did not abuse its discretion.

Appellant next contends that the trial court erred in finding that appellant violated the condition of his probation that prohibited him from engaging in assaultive, abusive, threatening or intimidating behavior because appellant did not knowingly annoy or alarm Mr. Buttrey.

This court must first take note that appellant was not arrested for his activities with regard to the violation of probation condition fourteen, which reads: "I will not engage in any assaultive, abusive, threatening or intimidating behavior." The trial court revoked appellant's probation for violation of this condition on the basis of testimony from Nathan Buttrey of the Governor's Office for Constituent Affairs, not on the basis of an arrest warrant or pending charges stemming from appellant's actions. Therefore, the trial court did not have elements of a criminal offense to consider in association with this violation. Nonetheless, appellant extrapolates from the requirements of condition fourteen that he was "charged" with harassment. *See* Tenn. Code Ann. § 39-17-308 (2008). Appellant further deduces that in order for the trial court to revoke his probation, he must have intended to threaten and knowingly annoy or alarm Mr. Buttrey.

Appellant's contention stems from unsound reasoning. Appellant was not charged with a criminal offense pursuant to condition fourteen of his probation terms. Violation of that condition is met by proof that the probationer engaged in assaultive, abusive, threatening, or intimidating behavior. While on the telephone with Mr. Buttrey, appellant stated that he wanted to kill white people, get some blood, and stab the Governor in the face with a pencil. Mr. Buttrey testified that as a result of appellant's tirade, he felt threatened. The actions Mr. Buttrey took in response to appellant's threat support his belief. Mr. Buttrey took the threat seriously enough that he referred the matter to the Governor's security detail for further investigation. The State presented proof that appellant violated condition fourteen. The trial court properly found that appellant violated that condition.

In this case, the record supports the trial court's order of probation revocation.  We conclude the trial court did not abuse its discretion in revoking appellant's probation and requiring him to serve his effective sentence.

Accordingly, the judgment of the trial court is affirmed.


_____

ROGER A. PAGE, JUDGE